# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RYK ANTHONY FRICKEY                                    CIVIL ACTION

VERSUS                                                          NO. 24-556

E. DUSTIN BICKHAM                                      SECTION: "E" (2)

## ORDER AND REASONS

Before the Court is a Report and Recommendation[1] issued by the assigned Magistrate Judge recommending Petitioner Ryk Anthony Frickey's ("Petitioner") Petition for Writ of Habeas Corpus[2] (the "Petition") be dismissed without prejudice.[3] Petitioner timely objected to the Magistrate Judge's Report and Recommendation.[4] For the reasons below, the Court **ADOPTS** the Report and Recommendation as its own.

## BACKGROUND

### I.    Procedural background

On September 17, 2020, a St. Charles Parish Assistant District Attorney filed an amended bill of information against Petitioner charging him with one count of aggravated criminal damage to property in violation of La. R.S. 14:55.[5] Following a jury trial, a St. Charles Parish jury found Petitioner guilty on April 22, 2021.[6] On July 20, 2021, the trial court denied Petitioner's motion for appointment of a sanity commission and motion for new trial after holding a hearing on both motions.[7] At the same hearing, the trial court

---

[1] R. Doc. 24.
[2] R. Doc. 1.
[3] R. Doc. 24.
[4] R. Doc. 25; R. Doc. 26.
[5] R. Doc. 10 at p. 24.
[6] *Id.* at p. 162.
[7] R. Doc. 11-3 at pp. 462, 473.

sentenced Petitioner to 10-years imprisonment.[8] The trial court denied Petitioner's motion to reconsider his sentence on August 3, 2021.[9]

Petitioner appealed his conviction and sentence to the Louisiana Fifth Circuit Court of Appeal ("Louisiana Fifth Circuit").[10] On direct appeal, Petitioner asserted eight arguments:

    i.   The evidence was insufficient to support the jury verdict.
    ii.   Petitioner was denied the right to counsel of his choice.
    iii.   The sentence was excessive.
    iv.   The trial court erred by denying Petitioner's request to introduce evidence of a deputy's prior behavior towards him.
    v.   The trial court erred by admitting Rule 404(b) evidence.
    vi.   The trial court erred by failing to appoint a sanity commission.
    vii.   The trial court erred by refusing to provide the defense a copy of the presentence investigation report.
    viii.   An errors patent review was requested.[11]

The Louisiana Fifth Circuit affirmed Petitioner's conviction and sentence on March 1, 2023, finding his assignments of error meritless.[12] Petitioner then applied for a writ to the Louisiana Supreme Court. On November 8, 2023, the Louisiana Supreme Court denied Petitioner's writ without written reason.[13] Petitioner did not file a writ for certiorari review with the United States Supreme Court and, accordingly, his conviction and sentence became final on February 6, 2023, 90 days from the Louisiana Supreme Court's writ denial.[14]

While Petitioner's writ on direct appeal was pending, he filed numerous other writ applications with the Louisiana Supreme Court. Petitioner filed his first on March 23,

---

[8] *Id.* at pp. 413, 481.
[9] R. Doc. 10 at p. 191.
[10] *State v. Frickey*, 22-261 (La. App. 5 Cir. 3/1/23), 360 So. 3d 19, *writ denied*, 2023-00468 (La. 11/8/23), 373 So. 3d 59.
[11] *Id.*
[12] *Id.*
[13] *State v. Frickey*, 2023-00468 (La. 11/8/23), 373 So. 3d 59.
[14] SUP. CT. R. 13(1).

2023.[15] On August 2, 2023, the Louisiana Supreme court refused to consider this writ application because Petitioner did not demonstrate that he had first sought review in the lower courts in violation of La. S. Cт. R. X.[16] The Louisiana Supreme Court denied another of Petitioner's writ applications the same day for the same reason.[17] The record does not contain a copy of this writ application.[18]

Petitioner filed a "Motion to Demand Right to Fast and Speedy Trial Pursuant to La.C.Cr.P. Art.701 [sic]" on April 1, 2023.[19] Three days later, Petitioner filed a "Motion to Quash" the bill of information filed against him in 2020.[20]  The trial court denied both motions on April 13, 2023.[21] Although the record does not show that Petitioner sought review of these orders with the Louisiana Fifth Circuit, Petitioner did seek review with the Louisiana Supreme Court on May 15, 2023.[22] Like Petitioner's other writs, the Louisiana Supreme Court did not consider this writ because Petitioner did not show he had first sought review in the lower courts.[23]

Petitioner filed his most recent writ with the Louisiana Supreme Court on November 4, 2023.[24] The Louisiana Supreme Court again did not consider this writ for Petitioner's failure to show he had first sought review in the lower courts.[25]

On March 4, 2024, Petitioner filed the Petition now before the Court.[26] He asserted the following claims for relief:

---

[15] R. Doc. 19 at pp. 14-15.
[16] *State v. Frickey*, 2023-00473 (La. 8/2/23), 367 So. 3d 637.
[17] *State v. Frickey*, 2023-00397 (La. 8/2/23), 367 So. 3d 632.
[18] R. Doc. 24 at p. 5.
[19] R. Doc. 10 at pp. 278-280.
[20] *Id*. at pp. 275-76.
[21] *Id*. at pp. 277, 281.
[22] R. Doc. 16 at pp. 1-13.
[23] *State v. Frickey*, 2023-00757 (La. 9/6/23), 369 So. 3d 806.
[24] R. Doc. 17.
[25] *State v. Frickey*, 2023-01496 (La. 1/17/24), 376 So. 3d 850.
[26] R. Doc. 1.

i.  He has been targeted individually and distinctly by a terrorist and crime organization in the State and underworld of prison businesses targeting the areas of St. Charles and Lafourche Parishes and plaguing the State gulf coast fishing and small business industries for enemy tactics and agenda. The accusers attack and target his family, children, and businesses. There has been prison and unethical targeting by a terrorist and crime family out of lower Lafourche and connected Parish of Catahoula, town of Gheens, La., corrupted C.O. and officers, corrupt targeting in lower Lafourche, Plaquemines Parish, and Catahoula Parish connections, gang targeting and stalking and prison underworlds targeting (Cartel type) crime and terrorist groups on his life and family for pyramid schemes and trafficking schemes.

ii. (a) Attacks have been made on his family and business through targeting by Freedom members and Al-Qaida soldiers, prison militias, gang informants, and some terrorist programs and projects to commit pyramid schemes with unjust chain of events to gain a lawsuit on his life and his family's lives. Terrorist soldiers and identity and control programs and torture attacks – same tactic was used on businessmen and military families since the '90s and 2005 in Des Allemandes and St. Charles area (female soldiers) and division tactics and control tactics to commit pyramid schemes and theft of assets of cartel victims of native Americans. Blood soldiers are constantly watching the growth of his family since 1970's and Vietnam era in these communities with constant racist state, plotting, and calculating pyramid schemes and vandalizing conflicts on original soldier family and native Americans who backed the South; and (b) there was insufficient evidence because the firearm was not working with a broken jam that gang terrorist attacked resources in matters called about when hunting bags were stolen out of his truck, including gear and bullets, deer gear, and duck gear before the incident. The deputy on the stand could not even explain that firearm reported to caller and made report on theft. There also was a copperplated pellet on the floor in the home and the casings on scene were not of copper Winchester shells, the only one that used copper pellets.

iii. He has suffered previous acts of violence on himself and his juvenile son. He suffered an injury to his lower back and had a lawsuit in federal court, but his lawyer did not subpoena witnesses. While healing, he was jumped by four people nearly losing his arm and had a 12 month infection and surgery. There was a case and conflict over an attempted murder in 2009 on his then 10-year-old son on a day of riding with friends, seeking him out of three, pushing him off trails into trees, throwing rocks and bricks at him, in a jealous rage and bully episode. He claims he can prove that there were seven other youths summoned by the attacker who corrupted and stole this boy's bike and found by a guy in Bayou Blue. This man caters to high profile people in terrorist and prison world and has always targeted our children, with a few also found deceased from his previous attacks. Witnesses that were also denied protection in the Parish, as his daughter and

4

grandchildren, targeting with those collaborating type Al-Qaida soldiers, prison type connection.[27]

Respondent answered the Petition on May 29, 2024.[28] Respondent argued that all the claims in Petitioner's Petition were unexhausted except for his sufficiency of the evidence claim (claim ii(b) above). Respondent argued the sufficiency of the evidence claim was meritless.[29]

On June 10, 2024, Petitioner responded to Respondent's answer.[30] The Magistrate Judge construed this response as a supplemental petition (the "Supplemental Petition") and summarized the claims Petitioner added in this Supplemental Petition:

   i.  Insufficient evidence and denial of *Miranda* rights.
   ii.  Denial of due process when denied counsel of choice at trial.
   iii.  Denial of right to present a defense relative to Officer Jeffery Wynne.
   iv.  Denial of due process relative to competency at sentencing.
   v.  Denial of due process relative to the presentence investigation report.
   vi.  Denial of due process when the court impermissibly allowed evidence of other bad acts in at trial and prevented exposing the targeting attack on his life and family by the victim's and witness's crimes and connections.
   vii.  Excessive sentence.
   viii.  Errors patent review.
   ix.  The trial was staged and the jury tainted by corruption.
   x.  The State had a picture of a copper plated pellet on the floor where this shooting took place but there was no Winchester shell on ground.
   xi.  Ms. Jessica St. Amant testified to her and Breaux laying in the bed at the time. His attorney failed to cross-examine this contention as Petitioner requested. Breaux said he was out walking the dogs and witness Petitioner on the bed of his truck. He was on the street checking on his children.[31]

Respondent did not respond to the Supplemental Petition.

---

[27] R. Doc. 24 at pp. 6-7; *see also* R. Doc. 1.
[28] R. Doc. 9.
[29] *Id.*
[30] R. Doc. 20.
[31] R. Doc. 24 at pp. 8-9; *see also* R. Doc. 20. This summary only includes Petitioner's claims made in his Supplemental Petition that are not repetitive of the claims in his original Petition. R. Doc. 24 at pp. 8-9 & n.30; *see also* R. Doc. 20.

Petitioner next filed a request to leave the 29th Judicial District of St. Charles on June 18, 2024.[32] Construed liberally, Petitioner asks the Court to move him physically from St. Charles Parish or Lafourche Parish to New Orleans.[33]

The Magistrate Judge determined this matter could be disposed of without an evidentiary hearing.[34] On July 9, 2024 the Magistrate Judge recommended denying Petitioner's request to be removed from custody in St. Charles Parish or Lafourche Parish and recommended that Petitioner's habeas corpus Petition be dismissed without prejudice for failure to exhaust.[35] Petitioner filed two sets of objections.[36]

On September 3, 2024, Petitioner filed a "motion to leave court."[37] In this motion, Petitioner makes new arguments and re-argues claims he already has asserted.[38]

In reviewing the Magistrate Judge's Report and Recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[39] As to the portions of the report to which Petitioner did not object, the Court need only review those portions to determine whether they are clearly erroneous or contrary to law.[40]

Petitioner's objections to the Report and Recommendation are difficult to decipher.[41] Petitioner does mention "exhausted violations" on the first page of his first set

---

[32] R. Doc. 23.
[33] *Id.*
[34] R. Doc. 24 at p. 1.
[35] R. Doc. 24. Although Respondent did not respond to the Supplemental Petition, the Magistrate Judge sua sponte considered whether Petitioner exhausted all claims in his Supplemental Petition and instructed Petitioner to respond to the Magistrate Judge's findings related to the Supplemental Petition in Petitioner's objections. *Id.* at p. 13.
[36] R. Doc. 25; R. Doc. 26.
[37] R. Doc. 27.
[38] *Id.*
[39] *See* 28 U.S.C. § 636(b)(1)(C) (2018) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[40] *Id.* § 636(b)(1)(A).
[41] R. Doc. 25; R. Doc. 26.

of objections.[42] Out of an abundance of caution the Court construes Plaintiff's objections broadly and will conduct a de novo review of all the Magistrate Judge's findings.

## II.   Factual background

The Louisiana Fifth Circuit summarized the facts of Petitioner's criminal case:

Brandon Breaux, the victim in this case, testified at trial that defendant is his first cousin and they grew up together, living two houses apart, in Des Allemands near Twin Bridge Road. Approximately eleven years ago, the victim moved to 201 Evelyn Drive. He testified that things went "south" between him and defendant in 2011 or 2012, and that there has been trouble between them ever since. He admitted that in 2013, he testified before a federal judge that he has held a grudge against defendant for approximately the last five years.

The victim testified that he has "50/50 custody" of his children and that his daughters, who were eleven and nineteen years old at the time of trial, stay with him on Mondays, Wednesdays, and every other Friday, Saturday, and Sunday. On the date of the incident at issue, the victim's girlfriend, Jessica St. Amant, lived with him, as did her son on a split schedule.

The victim testified that on May 1, 2020, he arrived home at approximately 7:00 p.m. following a day spent fishing. Ms. St. Amant was home with him, but his children were staying with his mother. At approximately 10:45 p.m., after using the restroom, the victim thought he heard a vehicle stop. Realizing he had not locked his vehicle, he approached the French doors in his home, turned on the exterior lights, and peered out of the window, but he did not see anyone in his driveway or his neighbor's driveway. At the same time, his dogs also approached the French doors to be let out.

The victim testified that he exited the house with the dogs and proceeded towards his vehicle parked in the driveway to lock it before going to bed. While one dog continued into the yard, the other dog stopped and "just stood there," refusing to move. When the victim looked to see what had the dog's attention, he saw defendant "above the white vinyl fence in the back of the house," standing in the bed of a white Chevrolet pickup truck holding a long-barreled gun pointed towards the back of his house. The victim described the fence as approximately six feet tall. According to the victim, defendant did not speak and "was just more like a statue, just froze in that position while looking down the barrel of the gun." Later, the victim identified defendant's truck in photographs.

---

[42] R. Doc. 25 at p. 1.

The victim described defendant as wearing a white t-shirt and recalls that a streetlight was on. He explained that he knew it was defendant because he had known defendant his entire life and that defendant has "pretty distinct facial features." The victim stated that, in a panic, he went to his vehicle where he had a firearm, but realized that if he opened the door, the vehicle lights would turn on. Through the vehicle window, the victim saw that defendant had not moved. Crouching behind his vehicle, the victim called 9-1-1.[5]

After placing the 9-1-1 call, the victim retreated into his home, called the dogs inside, and locked the door. He alerted Ms. St. Amant, who was sleeping on the couch, that someone was outside pointing a gun at the house and instructed her to go to an interior room. He stated that as Ms. St. Amant crossed the threshold of the bathroom, "a shot was fired" through the door. While still speaking with 9-1-1, a single shot into the home could be heard. During the 9-1-1 call—which pursuant to a pretrial stipulation was played for the jury—the victim told the operator that he had previously told others that defendant threatened to kill him.

Once law enforcement arrived on the scene, the victim opened the door. He explained that he saw glass everywhere and "holes in the wall where the shotgun pellets had entered the wall." There were also holes in the laundry room wall and into the refrigerator located in the laundry room. The victim testified that at the end of the hallway, he saw what he believed to be the wad from the shotgun shell. He picked it up and gave it to a deputy.[6] The victim described tire marks in the drainage ditch where defendant's truck was parked, which he did not remember seeing earlier in the day.

In addition to the physical damage to his property, the victim testified that the incident "had a great deal of negative effect" on his life, that he feels constantly threatened, and that it has negatively affected his relationships. He explained that his girlfriend no longer felt comfortable in his home and purchased her own residence. The victim stated that the mother of his children also no longer felt comfortable with his children being in the home because she felt "there was no safety net or nothing to stop it from happening again."[43]

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[43] *Frickey*, 360 So. 3d 19, 29-30.

determination of the facts in light of the evidence presented in the State court proceeding."[44] A federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[45] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[46]

The AEDPA requires that a federal court "accord the state trial court substantial deference."[47] However, the AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts.[48]

## EXHAUSTION DOCTRINE

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."[49] "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."[50]

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court in a procedurally proper

---

[44] 28 U.S.C. § 2254(d)(2).
[45] *Id.* § 2254(d)(1).
[46] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
[47] *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).
[48] 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).
[49] *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).
[50] *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

manner.[51] "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.[52] "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."[53] It is not enough for a petitioner to raise the claims in the lower state courts, if they also were not specifically presented to the Louisiana Supreme Court.[54]

## LAW AND ANALYSIS

### I.   Petitioner is not entitled to physical relocation.

Petitioner requests "removal out to St. Charles [and] Lafourche Parish for work release on federal hold ankle bracelet."[55] The Court construes this as a request to be removed from St. Charles and Lafourche Parishes. "[H]abeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose."[56] Petitioner's relocation request is unrelated to his cause of detention and does not raise any issue of unlawful imprisonment or custody.[57] Thus Petitioner's relocation request is denied.

---

[51] *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).
[52] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).
[53] *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).
[54] *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).
[55] R. Doc. 23.
[56] *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).
[57] R. Doc. 23.

## II.    Several of Petitioner's claims are unexhausted.

Petitioner only has exhausted seven grounds for relief in the Louisiana state court system. On direct appeal of Petitioner's conviction and sentence, Petitioner raised seven grounds for relief before the Louisiana Fifth Circuit and then the Louisiana Supreme Court. These grounds for relief were (1) the evidence was insufficient to support the jury verdict; (2) Petitioner was denied the right to counsel of his choice; (3) the sentence was excessive; (4) the trial court erred by denying Petitioner's request to introduce evidence of a deputy's prior behavior towards him; (5) the trial court erred by admitting Rule 404(b) evidence; (6) the trial court erred by failing to appoint a sanity commission; and (7) the trial court erred by refusing to provide the defense a copy of the presentence investigation report.[58] Petitioner did not raise his "errors patent review" claim before the Louisiana Supreme Court in his writ application.[59] Since Petitioner did raise the above seven grounds for relief before the Louisiana Supreme Court on direct review of his conviction and sentence,[60] these grounds for relief are exhausted.

These seven grounds for relief raised in the Supplemental Petition[61] are the only grounds for relief Petitioner has exhausted. In addition, Petitioner raises several other grounds for relief in his Petition and Supplemental Petition.[62] Petitioner has not exhausted any of the following grounds for relief he has raised in this case:

    i.    Request for errors patent review.
    ii.   Denial of *Miranda* rights.
    iii.  The trial was staged and the jury was tainted by corruption.
    iv.   Ms. Jessica St. Amant testified to her and Breaux laying in the bed at the time. His attorney failed to cross-examine this contention as Petitioner

---

[58] *Frickey*, 360 So. 3d 19.
[59] R. Doc. 13 at pp. 1-30.
[60] *Id.*
[61] R. Doc. 20.
[62] *Id.*; R. Doc. 1.

requested. Breaux said he was out walking the dogs and witness Petitioner on the bed of his truck. He was on the street checking on his children.

v.  He has been targeted individually and distinctly by a terrorist and crime organization in the State and underworld of prison businesses targeting the areas of St. Charles and Lafourche Parishes and plaguing the State gulf coast fishing and small business industries for enemy tactics and agenda. The accusers attack and target his family, children, and businesses. There has been prison and unethical targeting by a terrorist and crime family out of lower Lafourche and connected Parish of Catahoula, town of Gheens, La., corrupted C.O. and officers, corrupt targeting in lower Lafourche, Plaquemines Parish, and Catahoula Parish connections, gang targeting and stalking and prison underworlds targeting (Cartel type) crime and terrorist groups on his life and family for pyramid schemes and trafficking schemes.

vi.  Attacks have been made on his family and business through targeting by Freedom members and Al-Qaida soldiers, prison militias, gang informants, and some terrorist programs and projects to commit pyramid schemes with unjust chain of events to gain a lawsuit on his life and his family's lives. Terrorist soldiers and identity and control programs and torture attacks – same tactic was used on businessmen and military families since the '90s and 2005 in Des Allemandes and St. Charles area (female soldiers) and division tactics and control tactics to commit pyramid schemes and theft of assets of cartel victims of native Americans. Blood soldiers are constantly watching the growth of his family since 1970's and Vietnam era in these communities with constant racist state, plotting, and calculating pyramid schemes and vandalizing conflicts on original soldier family and native Americans who backed the South.

vii.  He has suffered previous acts of violence on himself and his juvenile son. He suffered an injury to his lower back and had a lawsuit in federal court, but his lawyer did not subpoena witnesses. While healing, he was jumped by four people nearly losing his arm and had a 12 month infection and surgery. There was a case and conflict over an attempted murder in 2009 on his then 10-year-old son on a day of riding with friends, seeking him out of three, pushing him off trails into trees, throwing rocks and bricks at him, in a jealous rage and bully episode. He claims he can prove that there were seven other youths summoned by the attacker who corrupted and stole this boy's bike and found by a guy in Bayou Blue. This man caters to high profile people in terrorist and prison world and has always targeted our children, with a few also found deceased from his previous attacks. Witnesses that were also denied protection in the Parish, as his daughter and grandchildren, targeting with those collaborating type Al-Qaida soldiers, prison type connection.

While Petitioner did raise some of these arguments before the Louisiana Supreme Court in his several writ applications,[63] the Louisiana Supreme Court refused to consider these writ applications due to Petitioner's failure to first seek review in the lower courts.[64] Because Petitioner either (1) did not present some of the claims in his Petition and Supplemental Petition to the Louisiana Supreme Court or (2) presented some of the claims to the Louisiana Supreme Court without first presenting them before the lower courts, he did not present these claims in a "procedurally proper manner."[65] Therefore Petitioner has not exhausted some of the claims in his Petition and Supplemental Petition.

## III.    The Court will dismiss the Petition rather than stay it.

Petitioner includes exhausted and unexhausted claims in his Petition and Supplemental Petition.[66] This makes the Petition "mixed."[67] When a court is presented with a mixed federal habeas corpus petition, the court may either dismiss it or stay it while the petitioner attempts to exhaust his unexhausted claims.[68] A stay is only "available only in limited circumstances."[69] "If the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics," then it would be appropriate for a court to stay a federal habeas petition.[70]

In this case, Petitioner does not show good cause for his failure to exhaust. The Louisiana Supreme explained to Petitioner multiple times that he needed to first present

---

[63] R. Doc. 19 at pp. 14-15; R. Doc. 16 at 1-13; R. Doc. 17.
[64] *Frickey*, 367 So. 3d 637; *Frickey*, 367 So. 3d 632; *Frickey*, 369 So. 3d 806; *Frickey*, 376 So. 3d 850.
[65] *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (quoting *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988)).
[66] *See supra* at pp. 11-13.
[67] *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).
[68] *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510); *see also Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Rhines v. Weber*, 544 U.S. 269, 274-78 (2005).
[69] *Rhines*, 544 U.S. at 277-78.
[70] *Id.*

his claims to the lower courts before presenting them to the Louisiana Supreme Court.[71]
Petitioner did not follow the proper procedure even after receiving the Louisiana Supreme
Court's rulings. Since a stay is not appropriate, the Court will dismiss the Petition without
prejudice for failure to exhaust.

**IV.    Petitioner's motion to leave court does not affect this Court's ruling that Petitioner's Petition contains unexhausted claims and is therefore denied.**

In Petitioner's motion to leave court, Petitioner asserts new arguments for relief
and restates old ones from his Petition and Supplemental Petition.[72] This motion does not
affect the Court's finding that Petitioner has presented a mixed petition containing
unexhausted claims or the Court's decision to dismiss the Petition without prejudice. The
Court denies Petitioner's motion to leave court.

**V.    Petitioner is not entitled to an evidentiary hearing.**

In Petitioner's second set of objections, Petitioner notes that a federal habeas
petitioner has right to an evidentiary hearing under some circumstances.[73] 28 U.S.C. §
2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State
> court proceedings, the court shall not hold an evidentiary hearing on the
> claim unless the applicant shows that—
>
>> (A) the claim relies on--
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on
>>> collateral review by the Supreme Court, that was previously
>>> unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered
>>> through the exercise of due diligence; and

---

[71] *Frickey*, 367 So. 3d 637; *Frickey*, 367 So. 3d 632; *Frickey*, 369 So. 3d 806; *Frickey*, 376 So. 3d 850.
[72] R. Doc. 27.
[73] R. Doc. 26 at p. 11.

14

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner does not show the applicability of a new, retroactive rule of constitutional law. Nor does Petitioner point to a factual predicate that could not have been discovered through the exercise of due diligence. Petitioner also does not show by clear and convincing evidence that, but for an alleged constitutional error, no reasonable factfinder would have found Petitioner guilty of Smith's murder. Therefore Petitioner is not entitled to an evidentiary hearing.

## **CONCLUSION**

**IT IS ORDERED** that the petition for federal habeas corpus relief filed by Ryk Anthony Frickey is **DISMISSED WITHOUT PREJUDICE**.[74]

**IT IS, FURTHER, ORDERED** that Petitioner's request to leave the 29th district of St. Charles is **DENIED**.[75]

**IT IS, FURTHER, ORDERED** that Petitioner's motion to leave court is **DENIED**.[76]

**New Orleans, Louisiana, this 11th day of October, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] R. Doc. 1.
[75] R. Doc. 23.
[76] R. Doc. 27.